UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                        :
ANTONIO NEVELS,                                         :
                                                        :
                    Plaintiff,                          :
                                                        :
        -against-                                       :
                                                        :        No. ____21-cv-10074____
CITY OF NEW YORK, CREATE, INC.,                         :
CREATE YOUNG ADULT RESIDENCES,                          :        **COMPLAINT**
OFFICER ALEXANDER ALIGNAY,                              :
OFFICER WILFRAN AVILA, AND                              :        **JURY TRIAL DEMANDED**
INDIVIDUAL DEFENDANTS JOHN AND                          :
JANE DOES, IN THEIR INDIVIDUAL                          :
CAPACITY,                                               :
                                                        :
                    Defendants.                         :
                                                        :
--------------------------------------------------------x

Plaintiff Antonio Nevels ("Mr. Nevels"), by and through his undersigned counsel, brings this action against Defendants the City of New York (the "City"), CREATE, Inc. ("CREATE"), CREATE Young Adult Residences ("CYAR"), Officer Alexander Alignay ("Alignay"), Officer Wilfran Avila ("Avila"), Officer and Individual Defendants JOHN and JANE DOEs ("the Individual Doe Defendants"), and complains and alleges as follows:

## NATURE OF THE ACTION

1.      This case arises from Defendants' blatant and cumulative violations of Mr. Nevels' constitutional and civil rights, as well as violations of New York State law.

2.      On May 12, 2020, Mr. Nevels was stabbed and assaulted while sleeping in his room at CYAR, a shelter where Mr. Nevels was living at the time.  Because CREATE and CYAR failed to properly enforce their no-weapons policy, Mr. Nevels' attacker was able to bring a knife into the CYAR shelter and caused Mr. Nevels' injuries.  Upon discovering the attack, CYAR's staff stood by and watched, instead of intervening or preventing further attacks, as Mr. Nevels was left

to fend for himself against his attacker.  As a result, Mr. Nevels suffered multiple stab wounds and injuries to his face, neck, ear, and hand.

3.      To make matters worse, after the stabbings, the New York City Policy Department (the "NYPD") arrested Mr. Nevels without probable cause, interfered with Mr. Nevels' medical treatment for his stab wounds, and refused to allow him to obtain his prescribed medications while Mr. Nevels was admitted at the Harlem Hospital Center for his injuries.  Instead, the NYPD handcuffed Mr. Nevels' freshly stabbed and stitched hand behind his back, took him to the 32nd Precinct, booked him, and wrongfully detained him for many hours.  Despite the fact that Mr. Nevels was the victim of this stabbing incident, the NYPD left Mr. Nevels suffering while detained, and without pain medication, food or water, before releasing him with a Desk Appearance Ticket.

4.      Mr. Nevels' arrest was baseless and without probable cause.  In fact, the New York District Attorney's Office ultimately dropped the false charges brought against Mr. Nevels, and the District Attorney handling Mr. Nevels' case informed Mr. Nevels' attorney that he disagreed with Mr. Nevels being arrested in the first place.

5.      Mr. Nevels not only suffered physical and emotional injuries, but was also subjected to violations of his constitutional and other legal rights due to CREATE's and CYAR's reckless and negligent failure to enforce their own policies or to stop the attacker during the physical assault, and due to the City's and the arresting officers' deliberate decisions to deprive Mr. Nevels of medical treatment and prescribed medications, unlawfully arrest him, use excessive force, illegally and unreasonably search and seize him, falsely imprison him, detain him for a prolonged period of time, and maliciously prosecute him.  Mr. Nevels now seeks damages for his

injuries resulting from Defendants' violation of his rights under the Constitution, as well as New York State and federal laws.

## THE PARTIES

6.    Plaintiff Antonio Nevels is an individual born on December 23, 1997, presently residing in New York, New York.

7.    Defendant City of New York is a municipal corporation organized under the laws of the State of New York.  Defendant City is authorized by law to maintain a police department, and does maintain the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  At all times relevant hereto, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all NYPD personnel, including police officers, detectives, investigators, sergeants, lieutenants and other supervisory officers or officials.  Defendant City assumes the risks incidental to the maintenance of the NYPD police force and the employment of NYPD employees.  In addition, at all times relevant hereto, Defendant City was responsible for enforcing the rules and regulations of the NYPD, and for ensuring that the NYPD personnel obey the laws and Constitutions of the United States and the State of New York.

8.    Defendant CREATE, Inc. is a 501(c)(3) organization.  At all times relevant hereto, Defendant CREATE was responsible for the policy, practice, supervision, implementation, and conduct of all CREATE and CYAR matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all CREATE and CYAR personnel.

9.      Defendant CYAR is a division owned and operated by CREATE, Inc.  CYAR is located at 133 W 128th Street, New York, New York 10027.  At all times relevant hereto, Defendant CYAR was responsible for the policy, practice, supervision, implementation, and conduct of all CYAR matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all CYAR personnel.

10.     Defendant Alignay was, at all times relevant hereto, a police officer, lieutenant, or sergeant, assigned to the 32nd Precinct, under Shield No. 22459 and Tax Reg. No. 952397, employed by the NYPD and, as such, was acting in the capacity of an agent, servant and employee of the NYPD and Defendant City.  Defendant Alignay was the arresting officer listed on Mr. Nevels' Desk Appearance Ticket.  Defendant Alignay is being sued in his individual and official capacities.

11.     Defendant Avila was, at all times relevant hereto, a police officer, lieutenant, or sergeant, assigned to the 32nd Precinct, under Shield No. 06246 and Tax Reg. No. 953644, employed by the NYPD and, as such, was acting in the capacity of an agent, servant and employee of the NYPD and Defendant City.  Defendant Avila was the assisting officer listed in Mr. Nevels' police report.  Defendant Avila is being sued in his individual and official capacities.

12.     At all relevant times herein, Defendants JOHN and JANE DOEs were acting as agents, servants and employees of the City of New York, the NYPD, CREATE, and CYAR.  This includes members of the NYPD who participated in, observed, or failed to intervene during Mr. Nevels' unlawful arrest, false imprisonment, prolonged detention, illegal and unreasonable search, deliberate deprivation of medical treatment and prescribed medications, malicious prosecution, and the use of excessive force on or about May 12, 2020.  This also includes the staff members of CREATE and CYAR who failed to protect or intervene on Mr. Nevels' behalf when

he was being stabbed and assaulted by his roommate at the shelter, and failed to enforce their no-weapons policy and prevent such stabbing from occurring.  Mr. Nevels is unaware of the number of JOHN or JANE DOES from the City, NYPD, CREATE, or CYAR and is unaware of the names, identities, or NYPD badge numbers of any of the JOHN and JANE DOEs.  For this reason, Mr. Nevels has sued the Individual Doe Defendants collectively and using placeholder names.  Defendants JOHN and JANE DOEs are being sued in their individual and official capacities.

13.     At all times here mentioned, Defendants Alignay, Avia, and Individual Doe Defendants acting in the capacity of an agent, servant and employee of the Defendant City and the NYPD were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the City and State of New York.

14.     As set forth more fully below, Defendants' actions and/or failures to act were malicious, wanton, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under 42 U.S.C. § 1983 as well as the First, Fourth and Fourteenth Amendments of the U.S. Constitution.  This Court also has jurisdiction over Mr. Nevels' state law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Mr. Nevels' claims occurred in this judicial district.

17.     Mr. Nevels has timely served a notice of claim upon the City of New York in compliance with Section 50-e of the New York General Municipal Law (GML § 50-e).

18.     The City has acknowledged receipt of Mr. Nevels' Notices of Claim, and has assigned them Claim Numbers 2020PI028445 and 2020PI028446.  A true and correct copy of the Notices of Claim are attached hereto as Exhibit 1 and Exhibit 2 and the allegations therein are incorporated by reference into this Complaint.

19.     At least thirty (30) days have elapsed since the claims upon which this action is based were presented to the Defendant City, and the City neglected and/or refused to make any payment or adjustment thereof.

20.     Mr. Nevels has complied with the municipal Defendant's demand for an examination, pursuant to GML § 50-h.

21.     On March 18, 2021, Mr. Nevels submitted to an examination under oath regarding the events at issue.  The certified transcript of the examination is attached hereto as Exhibit 3 and the allegations raised therein are incorporated by reference into this Complaint.

22.     Plaintiff commenced this action within the requisite statutes of limitations for the claims alleged in this Complaint.

23.     Mr. Nevels seeks monetary damages (compensatory and punitive) against Defendants, and such other and further relief as this Court may deem just and proper.

## **FACTUAL ALLEGATIONS**

### *Mr. Nevels Is Attacked and Stabbed Multiple Times By a CYAR Resident*

24.     In the early morning of May 12, 2020, Mr. Nevels was the victim of a violent attack at CYAR by a fellow resident.

25.     Residents of CYAR are prohibited from carrying weapons of any kind, including knives.  On or around May 12, 2020, however, CYAR failed to adequately screen its residents for

weapons. As a result, Mr. Nevels' roommate was able to bring a knife into their room and stabbed Mr. Nevels several times while Mr. Nevels was asleep.

26.     In addition to its failure to prevent the stabbing by properly enforcing its no-weapons policy, CYAR also neglected to stop the attacker from stabbing and attacking Mr. Nevels while Mr. Nevels was being stabbed and physically assaulted. After a significant amount of time had passed and after Mr. Nevels made numerous cries for help, a CYAR staff member, whose identity is unknown to Mr. Nevels, finally came into the room where Mr. Nevels was being attacked. Rather than immediately separating Mr. Nevels' attacker from him or aiding Mr. Nevels, the staff member simply stood at the doorway and verbally told Mr. Nevels and his attacker to stop the altercation.

27.     As a result of the attack, Mr. Nevels sustained severe lacerations and injuries to his face, neck, and ear, as well as a cut straight through his right hand, which is his dominant hand.

*Mr. Nevels Is Wrongfully Detained by the NYPD While Receiving Medical Treatment*

28.     The CYAR staff member eventually alerted the NYPD to the stabbing. Mr. Nevels believes around six or seven NYPD officers arrived at the scene. An NYPD officer, whose identity is unknown to Mr. Nevels, then rode in the ambulance with Mr. Nevels to the Harlem Hospital Center, where he was taken for medical treatment.

29.     While in the ambulance, and in the presence of an NYPD officer, Mr. Nevels spoke to his mother on the phone and told her that he had been a victim of a stabbing. Despite having just heard that Mr. Nevels had been attacked in his sleep and having seen his injuries firsthand, the NYPD handcuffed Mr. Nevels' injured hand to his hospital bed and shackled his feet together immediately after he was out of the ambulance.

30.     The NYPD officers did not inform Mr. Nevels that he was under arrest prior to handcuffing him.

31.     At the hospital, and without reading Mr. Nevels his *Miranda* rights, the NYPD officers asked Mr. Nevels what happened at the shelter.  Mr. Nevels again explained that he was the victim of a stabbing.

32.     Still, the NYPD officers kept Mr. Nevels shackled to his hospital bed the entire time he was undergoing medical treatment, including when he received stitches on his hand.  The police officers also kept Mr. Nevels' feet shackled throughout Mr. Nevels' time at the hospital, including when Mr. Nevels' hand was being stitched, and when he was getting X-rays taken.  The handcuffing and shackling of Mr. Nevels hands and feet were degrading, humiliating, unnecessary and unlawful.

*The NYPD Denies Mr. Nevels His Medication and Wrongfully Arrests Him*

33.     While Mr. Nevels was still admitted at the hospital, the NYPD placed Mr. Nevels under arrest without probable cause and told Mr. Nevels that they were taking him to the 32nd Precinct to be booked for assault.  As the victim of the stabbing incident, Mr. Nevels was shocked, horrified, and scared.

34.     Mr. Nevels was also still suffering excruciating pain from the stab wound that went straight through his hand, which the hospital staff had just stitched, in addition to the stab wounds around Mr. Nevels' face, neck, and ear.

35.     However, the NYPD officers were indifferent to Mr. Nevels' pain and denied him proper medical attention.  They proceeded to interfere with Mr. Nevels' medical treatment while he was still recovering from his injuries, and demanded that Mr. Nevels leave the hospital immediately, to be booked at the 32nd Precinct.

36.     Before the NYPD officers removed Mr. Nevels from his hospital bed, Mr. Nevels asked the officers if he could at least pick up the medication the physician prescribed to him for his pain.  Without any basis, at least one of the NYPD officers refused Mr. Nevels' multiple requests to obtain his prescribed medication, while other officers who were present failed to intervene.  The NYPD also denied Mr. Nevels' request to see his mother, who was at the hospital waiting to see her injured son, without offering any explanation.

37.     On the way to the Precinct, the NYPD again placed Mr. Nevels in handcuffs, with his freshly-stitched hands tangled behind his back.  Mr. Nevels asked the NYPD officers to place the handcuffs in the front of his body in light of the fact that he had just received stitches for the stab wound that went straight through his right hand.   The NYPD officers again refused Mr. Nevels' request, and/or failed to intervene to adjust Mr. Nevels' handcuffs.

*The NYPD Wrongfully Detains and Imprisons Mr. Nevels*

38.     While at the 32nd Precinct, Mr. Nevels was unlawfully searched by the NYPD, and kept for several hours without access to his prescribed medication, food, or water.  Mr. Nevels also requested to speak to an attorney but was denied.

39.     Over the course of his time at the Precinct, Mr. Nevels repeatedly requested food, water, medical attention, and medication.  He was visibly bleeding and in distress.  The NYPD denied all of his requests.

40.     Mr. Nevels was released with a Desk Appearance Ticket many hours later, despite the fact that he was the victim of the stabbing.

41.     The degrading and humiliating treatment Mr. Nevels received from the NYPD and the Defendant Officers was unlawful, and on information and belief, was racially motivated.

*Mr. Nevels Is Denied a Job and Transferred to a Different Shelter Because of His Unlawful Arrest*

42.    Before the NYPD released Mr. Nevels from the Precinct, he told an officer, whose identity is unknown to Mr. Nevels, that he had interviewed with the City's Sanitation Department, that the City had informed him that he would not be hired by the City if he had an arrest record, and that he was concerned that the false arrest would affect his job application with the City.  The officer told Mr. Nevels not to worry, and that the arrest would be taken off his record if he was the victim of the stabbing incident.  Since Mr. Nevels' false arrest by the NYPD, however, he has not been contacted for a job or hired by the City's Sanitation Department.  When Mr. Nevels contacted the Sanitation Department to check in on his job application and explained the circumstances regarding his arrest, the Sanitation Department told him that he likely was not contacted due to his arrest record.

43.    Upon being released by the NYPD, Mr. Nevels returned to the CYAR.  To Mr. Nevels' surprise, CYAR had packed Mr. Nevels' belongings and told him that he had to be transferred to another shelter due to the fact that he was involved in a stabbing incident, though they knew that he was the victim in the altercation.

44.    Because he was transferred to a different shelter, Mr. Nevels lost his place in queue for public housing assistance.  In addition, the files from his social workers at CYAR were not transferred to his new shelter, resulting in the loss of his documented progress with the social workers at CYAR.  Mr. Nevels would not have been transferred had CYAR enforced its no-weapons policy, which would have prevented Mr. Nevels' roommate from stabbing him in the first place.

*Mr. Nevels' Case Is Dismissed for Lack of Probable Cause*

45.    Based on the NYPD's wrongful arrest, Mr. Nevels was required to appear in court on October 12, 2020.  When he did, the New York County District Attorney's Office dismissed

Mr. Nevels' case for lack of probable cause, after the District Attorney handling Mr. Nevels' case emailed Mr. Nevels' attorney and informed them that he disagreed with Mr. Nevels being arrested in the first place.

46.     As a direct and proximate result of these occurrences, Mr. Nevels suffered psychological, emotional, and physical injuries.  Due to the false arrest on his record, it was extremely difficult, and prohibitive in most cases, for Mr. Nevels to obtain a job until his record was cleared.  To this day, Mr. Nevels suffers pain in his right hand and is not able to use it in ways he was previously capable of, such as lifting heavy objects.  This injury has prevented Mr. Nevels from obtaining jobs that require him to lift heavy items.  The harms Mr. Nevels suffered also include, among other things, personal pain and suffering, fear for his safety, fear of potential encounters with the NYPD, loss of earning capacity, and impairment of family and personal relationships.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Due Process Under the Fourteenth Amendment to the U.S. Constitution
and 42 U.S.C. § 1983
(Against the City, Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

47.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

48.     Defendants, their agents, servants, and employees, under the color of state law, acted intentionally and/or with deliberate indifference to deprive Mr. Nevels of his right to due process under the Fourteenth Amendment to the U.S. Constitution.

49.     Mr. Nevels has protected liberty interests in the right to be free from deprivation of medical treatment and prescribed medications, false arrest, unreasonable search and seizure, false

imprisonment, excessive force, prolonged detention, malicious prosecution, and malicious abuse of process.

50.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

51.     As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained damages as alleged herein.

## SECOND CAUSE OF ACTION
**Unlawful Search and Seizure Under the Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

52.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

53.     Defendants Alignay and Avila, and the Individual Doe Defendants intentionally confined Mr. Nevels when they arrested him and took him into police custody.

54.     Defendants also subjected Mr. Nevels and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause to do so.

55.     Mr. Nevels was conscious and fully aware of the unreasonable searches and seizures to his person and property.

56.     Mr. Nevels did not consent to the unreasonable searches and seizures to his person or property.

57.     The unreasonable searches and seizures to Mr. Nevels' person and property were not otherwise privileged.

58.     Defendants' acts were objectively unreasonable and constituted unlawful searches and seizures.

59.     Defendants acted under color of state law when Defendants committed these acts against Mr. Nevels without forewarning or justification.

60.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

61.     Accordingly, Defendants violated Mr. Nevels' right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the U.S. Constitution.

62.     As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained the damages as alleged herein.

<u>**THIRD CAUSE OF ACTION**</u>
**Unlawful Search and Seizure Under New York State Constitution**
**(Against the City, Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

63.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

64.     On May 12, 2020, Defendants Alignay and Avila, and the Individual Doe Defendants intended to confine Mr. Nevels when they arrested him at the Harlem Hospital Center, without probable cause, though it was clear that Mr. Nevels was the victim of a stabbing, and he did not commit a crime.

65.     Defendants subjected Mr. Nevels and his property to unreasonable searches and seizures.

66.     Mr. Nevels was conscious, fully aware, and did not consent to the unreasonable searches and seizures to his person or property.

67.     The unreasonable searches and seizures to Mr. Nevels' person and property were not otherwise privileged.

68.     Accordingly, Defendants violated Mr. Nevels' right to be free from unreasonable searches and seizures, pursuant to Article I, Section 12, of the New York State Constitution.

69.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

70.     Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

71.     As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained damages as alleged herein.

### FOURTH CAUSE OF ACTION
**Unlawful Search and Seizure Under New York Civil Rights Law**
**(Against the City, Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

72.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

73.     On May 12, 2020, Defendants Alignay and Avila, and the Individual Doe Defendants intended to confine Mr. Nevels when they arrested him at the Harlem Hospital Center, without probable cause, though it was clear that Mr. Nevels was the victim of a stabbing, and he did not commit a crime.

74.     Defendants subjected Mr. Nevels and his property to unreasonable searches and seizures.

75.     Mr. Nevels was conscious, fully aware, and did not consent to the unreasonable searches and seizures to his person or property.

76.     The unreasonable searches and seizures to Mr. Nevels' person and property were not otherwise privileged.

77.     Accordingly, Defendants violated Mr. Nevels' right to be free from unreasonable searches and seizures, pursuant to Article II, Section 8, of the New York Civil Rights Law.

78.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

79.     Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

80.     As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained damages as alleged herein.

### <u>FIFTH CAUSE OF ACTION</u>
**False Arrest and False Imprisonment Under New York State Law**
**(Against the City, Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

81.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

82.     On May 12, 2020, Defendants intended to confine Mr. Nevels when they subjected him to false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

83.     Mr. Nevels was conscious of his confinement.

84.     Mr. Nevels did not consent to his confinement.

85.     Mr. Nevels' arrest and false imprisonment was not otherwise privileged.

86.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

87.     Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

88.     As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained damages as alleged herein.

### SIXTH CAUSE OF ACTION
**False Arrest and False Imprisonment Under the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

89.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

90.     Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Mr. Nevels.

91.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Mr. Nevels was carried out without a valid warrant, without Mr. Nevels' consent, and without probable cause or reasonable suspicion.

92.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Mr. Nevels.

93.     Mr. Nevels was forced to submit to the aforesaid imprisonment entirely against his will.

94.     Defendants acted under color of state law when Defendants committed these acts against Mr. Nevels.

95.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

96.     Defendants Alignay and Avila, and the Individual Doe Defendants of the NYPD intended to have Mr. Nevels confined, Mr. Nevels was conscious of the confinement, Mr. Nevels did not consent to the confinement, and the confinement was not otherwise privileged.

97.     As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained the damages as alleged herein.

## SEVENTH CAUSE OF ACTION
**Excessive Force Under the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

98.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

99.     Defendants violated Mr. Nevels' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, because they used unreasonable force without Mr. Nevels' consent when they handcuffed his stabbed hand and feet to his ambulance bed, and kept them there throughout the entirety of his medical treatment, arrested him, deprived him of medication treatment and prescriptions while detained, and handcuffed his freshly stabbed and stitched hand tightly behind his back.

100.    Mr. Nevels did not commit a crime, but was instead the victim of a brutal stabbing.

101.    Mr. Nevels did not pose a threat to Defendants or any other officers or agents or any other person.

102.    Defendants engaged in and subjected Mr. Nevels to immediate harmful or offensive touching and injured him without his consent.

103.    Defendants acted under color of state law when Defendants committed these acts against Mr. Nevels without forewarning or justification.

104.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

105.     As a direct and proximate result of this breach, Mr. Nevels sustained the damages as alleged herein.

## EIGHTH CAUSE OF ACTION
### Malicious Prosecution Under the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983
### (Against Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)

106.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

107.     Defendants initiated the prosecution against Mr. Nevels, including by drafting and signing a sworn criminal court complaint and police reports falsely alleging that Mr. Nevels had committed various crimes.

108.     Defendants lacked probable cause to believe Mr. Nevels was guilty or that the prosecution would succeed.

109.     Defendants acted with malice, which, in the absence of probable cause, may be inferred.

110.     Defendants initiated the above-stated prosecution to cover up their illegal and unconstitutional conduct.

111.     The prosecution was terminated in Mr. Nevels' favor, when all criminal charges were unconditionally dismissed and sealed.

112.     Defendants acted under color of state law when Defendants committed these acts against Mr. Nevels.

113.     Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

114.    Accordingly, Defendants violated Mr. Nevels' Fourth and Fourteenth Amendment rights under the U.S. Constitution.

115.    As a direct and proximate result of the intentional, willful and unlawful acts of Defendants, Mr. Nevels sustained the damages as alleged herein.

**NINTH CAUSE OF ACTION**
**Malicious Prosecution Under New York State Law**
**(Against the City, Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

116.    The above paragraphs are hereby incorporated by reference as though fully set forth herein.

117.    Defendants initiated the prosecution against Mr. Nevels, including by drafting and signing a sworn criminal court complaint and police reports falsely alleging that Mr. Nevels had committed various crimes.

118.    Defendants lacked probable cause to believe Mr. Nevels was guilty or that the prosecution could succeed.

119.    Defendants acted with malice, which, in the absence of probable cause, may be inferred.

120.    Defendants initiated the above-stated prosecution to cover up their illegal and unconstitutional conduct.

121.    The prosecution was terminated in Mr. Nevels' favor, when all criminal charges were unconditionally dismissed and sealed.

122.    Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

123.    As a direct and proximate result of the intentional, willful and unlawful acts of Defendants, Mr. Nevels sustained the damages as alleged herein.

## TENTH CAUSE OF ACTION
### Malicious Abuse of Process Under the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983
### (Against Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)

124.    The above paragraphs are hereby incorporated by reference as though fully set forth herein.

125.    Defendants arrested, detained and caused a criminal prosecution to be initiated or maintained against Mr. Nevels to cover up their illegal and unconstitutional conduct.

126.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against Mr. Nevels, especially with the absence of any cognizable probable cause.

127.    Defendants intended to inflict substantial harm upon Mr. Nevels without excuse or justification.

128.    Defendants acted to achieve a collateral purpose, beyond or in addition to Mr. Nevels' criminal prosecution, including to cover up their illegal and unconstitutional conduct.

129.    Defendants acted under color of state law when Defendants committed these acts against Mr. Nevels.

130.    Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

131.    Accordingly, Defendants violated Mr. Nevels' Fourth and Fourteenth Amendment rights under the U.S. Constitution.

132.    As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained the damages as alleged herein.

## ELEVENTH CAUSE OF ACTION
### Malicious Abuse of Process Under New York State Law
**(Against the City, Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

133.    The above paragraphs are hereby incorporated by reference as though fully set forth herein.

134.    Defendants arrested, detained and caused a criminal prosecution to be initiated or maintained against Mr. Nevels to cover up their illegal and unconstitutional conduct.

135.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Mr. Nevels, particularly with the absence of any cognizable probable cause.

136.    Defendants intended to inflict substantial harm upon Mr. Nevels without excuse or justification.

137.    Defendants acted to achieve a collateral purpose, beyond or in addition to Mr. Nevels' criminal prosecution, including to cover up their illegal and unconstitutional conduct.

138.    Defendants were acting under the direction of the City and the NYPD and within the scope of their employment at the time they committed these acts against Mr. Nevels.

139.    Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

140.    As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained the damages as alleged herein.

## TWELFTH CAUSE OF ACTION
### Failure to Intervene Under the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983
**(Against Alignay, Avila, and Individual Defendants JOHN and JANE DOEs)**

141.    The above paragraphs are hereby incorporated by reference as though fully set forth herein.

142.     NYPD officers, and employees of the NYPD and Defendant City, including Alignay, Avila, and the Individual Doe Defendants, who were present during the aforementioned unlawful and unconstitutional conduct, had a duty to and opportunity to intervene, but failed to intervene during Mr. Nevels' wrongful arrest, false imprisonment, prolonged detention, illegal and unreasonable search, and deliberate deprivation of medical treatment and prescribed medications, malicious prosecution, and the use of excessive force.  Any reasonable person would know that Mr. Nevels' rights were being violated, and the Individual Doe Defendants disregarded Mr. Nevels' rights when they failed to intervene to stop the NYPD officers from actively participating in the unlawful conduct that violated Mr. Nevels' constitutional rights.

143.     Defendants acted under color of state law when Defendants committed these acts against Mr. Nevels.

144.     Accordingly, Defendants who failed to intervene violated Mr. Nevels' Fourth and Fourteenth Amendment rights under the U.S. Constitution.

145.     As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained the damages as alleged herein.

## THIRTEENTH CAUSE OF ACTION
**Negligent Hiring, Training, Retention and Supervision Under New York State Law**
**(Against the City, CREATE, CYAR, and Individual Defendants JOHN and JANE DOEs)**

146.     The above paragraphs are hereby incorporated by reference as though fully set forth.

147.     Defendants owed a duty of care to Mr. Nevels to adequately hire, train, retain and supervise their employees.

148.     Defendants breached those duties of care by failing to adequately hire, train, retain and supervise their employees, the Individual Doe Defendants.

149.    Defendants placed the Individual Doe Defendants and their other employees in a position where they could have prevented foreseeable harm that Mr. Nevels incurred.

150.    Defendants failed to take reasonable measures in hiring, training, retaining and supervising their employees, the Individual Doe Defendants, that would have prevented the aforesaid injuries to Mr. Nevels.

151.    Defendant City, as the principal and supervisor of the NYPD is responsible for its and its officers' wrongdoing under the doctrine of *respondeat superior.*

152.    Defendants CREATE and CYAR, as the employer of the Individual Doe Defendants, are responsible for their wrongdoing under the doctrine of *respondeat superior.*

153.    As a direct and proximate result of this unlawful conduct, Mr. Nevels sustained the damages as alleged herein.

**FOURTEENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress Under New York State Law**
**(Against the City, Alignay, Avila, CREATE, CYAR,**
**and Individual Defendants JOHN and JANE DOEs)**

154.    The above paragraphs are hereby incorporated by reference as though fully set forth.

155.    Defendants CREATE, CYAR, and the Individual Doe Defendants engaged in conduct that was unconsented to, extreme, outrageous, intolerable, beyond the bounds of civil conduct and both intended to or likely to cause Mr. Nevels severe emotional distress.  Such conduct includes, but is not limited to, failure to adequately maintain, oversee, or enforce their no-weapons policy, failure to protect Mr. Nevels from physical attacks taking place at the Defendant shelter, and failure to intervene on Mr. Nevels' behalf while he was being stabbed.

156.    Defendants the City, Alignay, Avila and the Individual Doe Defendants engaged in conduct that was unconsented to, extreme, outrageous, intolerable, beyond the bounds of civil

conduct and both intended to or likely to cause Mr. Nevels severe emotional distress. Such conduct includes, but is not limited to, falsely and wrongly arresting Mr. Nevels, wrongfully holding him in police custody, falsely imprisoning Mr. Nevels, keeping Mr. Nevels in prolonged detention, using excessive force, illegally and unreasonably searching Mr. Nevels, preventing him from seeing his mother, deliberately depriving him of medical treatment and prescribed medication, and maliciously prosecuting Mr. Nevels.

157.    Defendants intended to or were grossly indifferent to the likelihood that such conduct would cause Mr. Nevels severe emotional distress.

158.    Mr. Nevels suffered severe emotional distress as a direct and proximate result of Defendants' conduct.

159.    Defendants were acting under the direction of the City, the NYPD, CREATE, or CYAR, and within the scope of their employment.

160.    Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

161.    Defendants CREATE and CYAR, as the employer of the Individual Doe Defendants, are responsible for their wrongdoing under the doctrine of *respondeat superior.*

162.    As a result of the foregoing, the Mr. Nevels was damaged in an amount to be determined by the Court.

### FIFTEENTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress Under New York State Law**
**(Against the City, Alignay, Avila, CREATE, CYAR,**
**and Individual Defendants JOHN and JANE DOEs)**

163.    The above paragraphs are hereby incorporated by reference as though fully set forth.

164.    Defendants CREATE, CYAR, and the Individual Doe Defendants failed to enforce their no-weapons policy and to prevent Mr. Nevels' roommate from violently attacking Mr. Nevels with a knife; Defendants also failed to protect or intervene on Mr. Nevels' behalf when he was stabbed numerous times by his attacker.

165.    The NYPD, and Defendants the City, Alignay, Avila and the Individual Doe Defendants engaged in negligent conduct which includes, but is not limited to, falsely and wrongly arresting Mr. Nevels, a victim of violence, wrongfully holding him in police custody, falsely imprisoning Mr. Nevels while at the hospital, keeping Mr. Nevels in prolonged detention, using excessive force, illegally and unreasonably searching Mr. Nevels, preventing him from seeing his mother for no reason, deliberately interfering with medical treatment and depriving him of prescribed medication, and maliciously prosecuting Mr. Nevels despite knowing that he was a victim of violence.

166.    Defendants CREATE, CYAR, and the Individual Doe Defendants owed a duty of care to maintain, oversee, and enforce their no-weapons policy, prevent violent attacks from happening at the shelter, and protect Mr. Nevels from being stabbed by his roommate.

167.    The NYPD, and Defendants the City, Alignay, Avila, and the Individual Doe Defendants owed a duty of care to Mr. Nevels to refrain from: (1) falsely and wrongly arresting Mr. Nevels without probable cause or a valid warrant; (2) wrongfully holding Mr. Nevels in police custody and keeping Mr. Nevels in prolonged detention without cause; (3) using excessive force against Mr. Nevels, particularly while at the hospital and when transporting him from the hospital to the precinct; (4) falsely imprisoning Mr. Nevels; (5) illegally and unreasonably searching Mr. Nevels; (6) interfering with Mr. Nevels' medical treatment and preventing Mr. Nevels from

accessing his medical prescription; or (7) maliciously prosecuting Mr. Nevels despite knowing that he was a victim of violence.

168.     Defendants negligently and recklessly failed to perform that duty of care, and said negligence was a direct and proximate cause of further mental and emotional injury to the Mr. Nevels.

169.     Defendants were acting under the direction of the City, the NYPD, CREATE or CYAR, and within the scope of their employment.

170.     Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

171.     Defendants CREATE and CYAR, as the employer of the Individual Doe Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

172.     The negligence of Defendants resulted in severe emotional distress to Mr. Nevels and damages in an amount to be determined by this Court.

### SIXTEENTH CLAIM
**Negligence Under New York State Law**
**(Against the City, Alignay, Avila, CREATE, CYAR,**
**and Individual Defendants JOHN and JANE DOEs)**

173.     The above paragraphs are hereby incorporated by reference as though fully set forth.

174.     Defendants CREATE, CYAR, and the Individual Doe Defendants owed a duty of care to maintain, oversee, and enforce their no-weapons policy, prevent violent attacks from happening at the shelter, and protect Mr. Nevels from being stabbed by his roommate.

175.     The NYPD, and Defendants the City, Alignay, Avila and the Individual Doe Defendants engaged in negligent conduct which includes, but is not limited to, falsely and wrongly

arresting Mr. Nevels, a victim of violence, wrongfully holding him in police custody, falsely imprisoning Mr. Nevels while at the hospital, keeping Mr. Nevels in prolonged detention, illegally and unreasonably searching Mr. Nevels, preventing him from seeing his mother for no reason, using excessive force, deliberately interfering with medical treatment and depriving him of prescribed medication, and maliciously prosecuting Mr. Nevels despite knowing that he was a victim of violence.

176.   Defendants failed to apply the skill and care required, and thus breached that duty of care.

177.   Defendants' negligence was a direct and proximate cause of Mr. Nevels' injuries.

178.   Defendants were acting under the direction of the City, the NYPD, CREATE or CYAR, and within the scope of their employment.

179.   Defendant City, as the employer of Alignay and Avila, and the Individual Doe Defendants, and the principal and supervisor of the NYPD, is responsible for the wrongdoings of the NYPD officers and the NYPD under the doctrine of *respondeat superior*.

180.   As a result of the foregoing, Mr. Nevels suffered damages in an amount to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Nevels respectfully requests that the Court grant the following relief:

A.   Compensatory damages, other damages, and interest in an amount to be determined at trial;

B.   Punitive damages in an amount to be proven at trial;

C.   Reasonable fees, costs, and expenses incurred in connection with this action as provided in law or equity;

D.      Interest; and

E.      Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Mr. Nevels demands a trial by jury on all claims triable by jury.

Dated:   New York, New York
         November 24, 2021

                            GIBSON, DUNN & CRUTCHER LLP


                            By:     */s/  Christopher Belelieu*
                            Christopher Belelieu
                            200 Park Avenue, Floor 48
                            New York, NY 10166-0193
                            Tel:    212.351.4000
                            Fax:    212.351.4035
                            CBelelieu@gibsondunn.com

                            JungEun Lee (*pro hac vice* forthcoming)
                            1050 Connecticut Avenue, NW
                            Washington, D.C. 20036-5306
                            Tel:    202.887.3717
                            Fax:    202.530.9636
                            NLee@gibsondunn.com

                            Raychel Teasdale (*pro hac vice* forthcoming)
                            333 South Grand Avenue
                            Los Angeles, CA 90071-3197
                            Tel:    213.229.7904
                            Fax:    213.229.6904
                            RTeasdale@gibsondunn.com

                            *Attorneys for Plaintiff Antonio Nevels*